

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DERRICK McCULLOUGH,

           Plaintiff,

-against-

T. BURROUGHS, Correctional Officer, Arthur
Kill Correctional Facility; MENDEZ,
Correctional Officer, Arthur Kill Correctional
Facility,

           Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 04-CV-3216 (FB) (LB)

*Appearances:*
*For the Plaintiff:*
DERRICK McCULLOUGH, *pro se*
#02A5931
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

*For the Defendants:*
ELIOT SPITZER
Attorney General of the State of New York
By:   DONALD PAUL DELANEY, ESQ.
Assistant Attorney General
120 Broadway
New York, NY 10271

**BLOCK, District Judge:**

      *Pro se* prisoner plaintiff, Derrick McCullough ("McCullough"), brings this lawsuit under 42 U.S.C. § 1983 against defendants T. Burroughs ("Burroughs") and L. Mendez ("Mendez")[1] in both their individual capacities and as officers of Arthur Kill Correctional Facility ("Arthur Kill"),[2] a division of New York State Department of

---

[1] The caption of the complaint lists the defendant as "Mendez"; however, the body of the complaint identifies the defendant as "L. Mendez." Compl. at 1.

[2] Although the caption of the complaint does not specify the capacities in which the defendants are being sued, the body of the complaint notes that plaintiff is suing the defendants in both their "official and individual capacit[ies,]" Compl. at 3-4; accordingly, the Court will treat the complaint as against the defendants in both of these capacities. *See Soto v. Schembri,* 960 F. Supp. 751, 755 (S.D.N.Y. 1997) (treating complaint

Correctional Services ("DOCS"). McCullough, a former inmate at Arthur Kill, alleges, *inter alia*, that the defendants assaulted him and seeks monetary damages and injunctive relief.

Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that McCullough has not exhausted his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Because both parties have presented material outside the pleadings and McCullough has construed the defendants' motion as one for summary judgment, *see* McCullough's Opp. to Defs.' Motion at 1 (labeling his opposition as a response to defendants' motion for summary judgment *and* for dismissal), the Court will treats it as one for summary judgment (defendants provided McCullough with the requisite advisory notice pursuant to Local Rule 12.1). *See Scott v. Gardner*, 287 F. Supp. 2d 477, 485-86 (S.D.N.Y. 2003) (sufficient notice to treat motion to dismiss as one for summary judgment where defendants served Local Rule 12.1 notice on plaintiff); *see also Taylor v. New York State Dep't of Corrs.*, 2004 WL 2979910, at *4 (S.D.N.Y. Dec. 22, 2004) (treating motion to dismiss as one for summary judgment where Local Rule 12.1 notice served on *pro se* plaintiff).

Preliminarily, the Court *sua sponte* dismisses McCullough's claims for damages against the defendants in their official capacities because they are barred by the Eleventh Amendment,[3] *see Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (citing *Kentucky*

---

as suing defendants in official capacities because body of complaint referred to defendants in their official capacities).

[3] The Court may *sua sponte* dismiss a claim on the ground of Eleventh Amendment immunity because it affects subject matter jurisdiction. *See Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) (*sua sponte* raising Eleventh Amendment immunity "because it affects . . . subject matter jurisdiction").

2

v. *Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment)); however, McCullough's claims for prospective injunctive relief against the defendants in their official capacities are not barred by the Eleventh Amendment and therefore are not dismissed. *See Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990) ("On the other hand, a state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar."). For the following reasons, summary judgment is denied in all other respects.

## BACKGROUND

### A. McCullough's Affidavits

The following is taken from two affidavits submitted by McCullough: (1) an affidavit attached to his complaint and (2) an affidavit submitted in opposition to the defendants' motion.

On April 9, 2004, the defendants accosted him and ordered him to place his hands on the wall. Burroughs then "pat frisk[ed]" and "vi[]ciously punched" him in his left side, McCullough Aff. in Supp. of Compl. ¶ 5-6; during the encounter, Burroughs screamed, "Do you have a fucking beef with me?" and threatened that the defendants would "get [him] sooner or later." *Id.* ¶ 8. While Burroughs was punching him, Mendez "attempted to block other inmates from seeing what was occurring." *Id.* ¶ 7. McCullough believed that the incident was "in retaliation for a harassment grievance [that he] had filed against . . . Burroughs." *Id.* ¶ 9.

3

McCullough admits that he never filed a grievance in regard to this incident, but offers, as a justification, that it was "because of bias acts already placed against [him]." Aff. in Opp. to Defendants' Mot. ¶ 11. He did, however, submit a "formal complaint" to the superintendent of Arthur Kill and the Inspector General's ("IG") Office; furthermore, "[a] representative from the [IG]'s Office came to Arthur Kill to interview [him]." *Id.* ¶¶ 12-13. He also noted that the defendants have "constantly harassed" him and that, in the past, he had filed "[s]everal grievances against the defendants[.]" *Id.* ¶¶ 15-16.

**B. Defendants' Affidavit**

The Director of the DOCS's Inmate Grievance Program ("IGP") submitted an affidavit averring that the Central Office Review Committee ("CORC"), a division of DOCS, had no record that McCullough had ever filed an appeal of any grievance. He did not state whether McCullough had ever filed a grievance of any kind. No other affidavits were submitted on the defendants' behalf.

## DISCUSSION

### I.

A district court must grant summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). In considering a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving

party." *Id.* (citing *Anderson*, 477 U.S. at 255). Moreover, "[w]here the non-moving party is proceeding *pro se,* the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest arguments that they suggest.'" *Forsyth v. Federation Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (quoting *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994)).

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.SC. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted[,]" 42 U.S.C. § 1997a(e); this exhaustion requirement applies "whether [a prisoner] allege[s] excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[T]he burden of proving [McCullough]'s non-exhaustion rests upon defendants . . . ." *Roland v. Murphy*, 289 F. Supp. 2d 321, 323 (E.D.N.Y. 2003); *see also Evans v. Jonathan*, 253 F. Supp. 2d 505, 509 (W.D.N.Y. 2003) ("The failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense on which defendant bears the burden of proof." (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)).

## A. NY DOCS Inmate Grievance Program ("IGP")

The DOCS has a well-established three-step IGP to resolve inmate grievances. "First, the inmate files a level 1 grievance (either on an Inmate Grievance Complaint Form, or on plain paper if the form is not readily available) with the Inmate Grievance Resolution Committee ("IGRC"), which is composed of fellow inmates and prison officials[,]" *Hemphill v. New York*, 380 F.3d 680, 682 (2d Cir. 2004); the level 1 grievance must be filed within fourteen days of the alleged incident. *See* 7 N.Y.C.R.R. § 701.7(a)(1).

5

> The IGRC must convene a hearing, if necessary, within seven working days, and issue a written decision within two days of the hearing. Next, the inmate has four days to appeal the IGRC decision to the superintendent of the facility, who must respond within ten days and must provide "simple directions" on how to appeal to the next level, the [CORC]. The inmate's final opportunity for resolution of his grievance is to appeal to the CORC within four working days of the superintendent's decision. The CORC then has 20 working days to render a decision. 7 N.Y.C.R.R. § 701.7(c)(4).

*Hemphill*, 380 F.3d at 682. If any of the above steps is "not decided within the time limit[ specified]," it "may be appealed to the next step."[4] 7 N.Y.C.R.R. § 701.8.

## B. Exceptions to the PLRA Exhaustion Requirement

The Second Circuit "has recognized that while the PLRA's exhaustion requirement is mandatory, certain caveats apply." *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004). First, in certain situations (such as when prison officials withhold a promised remedy), a court may deem the procedures not "available." *See id.* (citing, *inter alia*, *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). Next, a prison official who inhibits a prisoner

---

[4] There is also an expedited grievance procedure for prisoners who, as in the present case, allege that they have been harassed or assaulted by correctional officers. *See* 7 N.Y.C.R.R. § 701.11. Under the regulation in place as of McCullough's alleged assault, it was unclear whether the expedited procedure altered the procedure for a prisoner to file a grievance; effective on April 14, 2004, five days after McCullough's alleged assault, the regulation was amended to provide that the prisoner should follow the same procedures set forth in the three-step IGP. *See* 7 N.Y.C.R.R. § 701.11(1) ("An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.7(a)(1) of this Part [the three-step IGP set forth above]."). Under the amended regulation, the expedited grievance procedure differs from the ordinary grievance procedure only in the amount of time that the Superintendent has to render a decision in regard to the grievance. *See* 7 N.Y.C.R.R. § 701.11. In light of the Court's denial of summary judgment, the Court need not concern itself with the nuances of the expedited grievance procedure before the amendment.

from using the grievance procedures may be estopped from invoking the exhaustion requirement. *See id.* (citing *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004)). Finally, "'[s]pecial circumstances' may exist that amount to a 'justification' for not complying with administrative procedural requirements." *Id.* (citing *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004), and *Rodriguez v. Westchester County Jail Corr. Dep't*, 372 F.3d 485 (2d Cir. 2004)).

Summary judgment must be denied because there are genuine issues of material facts as to: (1) whether grievance procedures were available to McCullough and (2) whether the defendants are estopped from raising the exhaustion defense.

## II.

### A. Availability of Administrative Remedies

In *Hemphill*, the Second Circuit addressed whether administrative remedies were "available" under facts that closely resemble those in the present case: there, the prisoner plaintiff alleged that several correctional officers had assaulted him and threatened him that he had "better drop" a claim that the officers believed he had filed; following the incident, the plaintiff wrote a letter to the superintendent stating that he intended to file "criminal charges" against the officers, but never filed a grievance with the IGRC. *See* 380 F.3d at 683 - 84, 686. The Second Circuit articulated that the proper test for determining whether ordinary grievance procedures were "available" was whether "a similarly situated individual of ordinary firmness [would] have deemed them available"; notably, it commented that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to

external structures of authority such as state or federal courts." *Id.* at 688. Applying the test to the limited factual record before it, the circuit court remanded to the lower court to determine whether or not the grievance procedures were available to the plaintiff. *See id.*

Similarly, in the present case, McCullough alleges that he was physically assaulted by the defendants in retaliation for his filing an earlier grievance; if true, it is certainly plausible that the assault would deter a person of ordinary firmness from using that same grievance process to grieve the instant claims; therefore, as in *Hemphill*, the Court cannot conclude at this stage that the normal grievance procedures were "available" to McCullough.

**B. Estoppel**

The Second Circuit also held in *Hemphill* that "prison officials' threats or other inhibiting conduct may estop defendants from asserting the affirmative defense of non-exhaustion." 380 F.3d at 688. "To establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment." *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002) (citation omitted). "When asserting equitable estoppel against the government, one must also prove affirmative misconduct." *Id.*

McCullough alleges that the April 9, 2004, assault occurred in retaliation for prior grievances that he had filed against Burroughs and that, during the assault, Burroughs expressly threatened that he would "get [him]." Implicit in Burroughs' words and actions was that Burroughs would again assault McCullough if he filed another grievance against Burroughs; thus, it was reasonable for McCullough to rely on Burroughs'

8

threat and opt against filing a subsequent grievance. If these allegations are true, Burroughs would be estopped from raising this defense of non-exhaustion. In regard to Mendez, although McCullough does not assert that Mendez directly threatened him or retaliated against him for filing grievances, *cf. Barad v. Comstock*, 2005 WL 1579794, at *6 (W.D.N.Y. June 30, 2005) (no estoppel where individual defendants did not make threats against plaintiff), the Court cannot conclude in light of the limited record before it that Mendez is not similarly estopped. *See Liner v. Goord*, 310 F. Supp. 2d 550, 554 (W.D.N.Y. 2004) (denying motion for summary judgment because further factual development was required).

## CONCLUSION

Summary judgment is granted with respect to the claims for damages against the defendants in their official capacities and otherwise denied.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
November 29, 2005