UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DERRICK McCULLOUGH,

            Plaintiff,

  -against-

T. BURROUGHS, Correctional Officer, Arthur Kill Correctional Facility; MENDEZ, Correctional Officer, Arthur Kill Correctional Facility,

            Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 04-CV-3216 (FB) (LB)

*Appearances:*
*For the Plaintiff:*
DERRICK McCULLOUGH, *pro se*
#02A5931
Five Points Correctional Facility
State Route 96, P.O. Box 119
Romulus, New York 14541

*For the Defendants:*
ANDREW M. CUOMO
Attorney General of the State of New York
By: REBECCA ANN DURDEN, ESQ.
Assistant Attorney General
120 Broadway
New York, NY 10271

**BLOCK, Senior District Judge:**

      *Pro se* prisoner plaintiff, Derrick McCullough ("McCullough"), brings this lawsuit under 42 U.S.C. § 1983 against defendants T. Burroughs ("Burroughs") and L. Mendez ("Mendez"), both officers of Arthur Kill Correctional Facility ("Arthur Kill"), a division of the New York State Department of Correctional Services ("DOCS"). McCullough, a former inmate at Arthur Kill, alleges, *inter alia*, that the defendants assaulted him; he seeks monetary damages and injunctive relief. Defendants previously moved to dismiss McCullough's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on account of his failure to exhaust all administrative remedies prior to filing suit;

the Court converted the motion to a motion for summary judgment and denied it. *See McCullough v. Burroughs*, No. 04-CV-3216(FB)(LB), 2005 WL 3164248 (Nov. 29, 2005). Now, on a fully-developed record, defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), again arguing non-exhaustion. For the following reasons, the motion is granted.

## BACKGROUND

The following version of the facts is taken from two affidavits submitted by McCullough – (1) an affidavit attached to his complaint and (2) an affidavit submitted in opposition to the defendants' motion to dismiss – as well as from McCullough's subsequent deposition and a contemporaneous medical report.[1]

On April 9, 2004, the defendants accosted McCullough as he was talking with other prisoners in the day room. Defendant Burroughs ordered McCullough to "step outside" for "no apparent reason." McCullough Dep. ("Dep.") at 12:10-13, 14:6. Once outside of the room, Burroughs ordered McCullough to place his hands on the wall, then "pat frisk[ed]" him while Mendez looked on. McCullough Aff. in Supp. of Compl. ("Aff./Compl.") ¶ 5. During the frisk, Burroughs "vi[]ciously punched" McCullough in his left side, screaming, "Do you have a fucking beef with me?" *Id.* ¶ 6. Burroughs continued screaming at McCullough, stating that he and Mendez would "get [him] sooner or later." *Id.* ¶ 8. Other prisoners in the day room attempted to watch through the

---

[1] McCullough's various affidavits and deposition testimony are at times inconsistent. Where they disagree, the Court presents the version of the facts most favorable to McCullough, the non-moving party, as is appropriate on summary judgment. *See Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)).

2

window, but Mendez stood so as to "block other inmates from seeing what was occurring." *Id.* ¶ 7.

After Burroughs let him go, McCullough told Burroughs that he was "going to have to answer for" what he had just done. Dep. at 12:25-13:6. Burroughs replied, "Excuse me, I don't have to answer for nothing," and frisked McCullough once again. *Id.* at 13:7-9. McCullough believed that the incident was "in retaliation for a harassment grievance [that he] had filed against ... Burroughs" previously. Aff./Compl. ¶ 9.

Subsequently, Mendez returned to the day room and McCullough asked him for a pass to the superintendent's office in order to file a complaint against Burroughs for "physical abuse"; Mendez denied the pass. Dep. at 13:12-17. A bit later, however, McCullough was permitted to go to the superintendent's office, where he lodged what he calls a "formal complaint[.]" Aff. in Opp. to Defs.' Mot. to Dismiss ("Aff./Mot. to Dismiss") ¶ 12.[2]

Approximately two hours after the incident, McCullough went to the medical building, where his left lower side was photographed. The contemporaneous medical report states that McCullough claimed he was "punched by [a corrections officer] after he was told to get against the wall"; the doctor wrote that an examination of McCullough's left lower back revealed "[n]o visible bruise, scrape or laceration...." Ambulatory Health Record, Ex. B to Durden Aff., at 1. McCullough acknowledges he had no physical injuries. Nevertheless, McCullough was "so upset and so paranoid" that a psychiatrist was called

---

[2] At some unspecified point in time, McCullough also submitted a "formal complaint" to the Inspector General's Office, which sent a representative to Arthur Kill to interview McCullough. Aff./Mot. to Dismiss ¶¶ 13-14.

3

in. Dep. at 13:23-14:3; Aff./Compl. ¶ 10. The psychiatrist gave McCullough a shot of Haldol to calm him down and put him under observation for three days in the Special Housing Unit.

While McCullough was under observation, Burroughs and Mendez prepared and signed a misbehavior report, alleging that McCullough had "[c]reat[ed] a disturbance," committed "[h]arassment," "[r]efus[ed] a direct order," and "[r]efuse[d] [a] search or frisk." Aff./Compl. ¶ 11; Dep. at 15:6-17. Mendez also made a "cryptic entry" in the Housing Unit Log Book stating that McCullough "was yelling from [the] day room window to [Officer] Burroughs in a bel[l]igerent ... manner and when [Officer Burroughs] turned around inmate McCullough was pat frisked because of his suspicious manner." Aff./Compl. ¶ 12. McCullough was subsequently sentenced to fifteen days "keeplocked" in the Special Housing Unit for this alleged misbehavior. *Id.* ¶13.

McCullough admits that he never filed an official grievance with the DOCS in regard to this incident. He has variously indicated that he did not do so:

(1) "because of bias[ed] acts already placed against [him,]" Aff./Mot. to Dismiss ¶ 11;

(2) because he had filed several grievances over prior incidents "and nothing was actually done ... because there [were] a lot of cover-ups within [the Arthur Kill] facility ... [,]" Dep. at 17:21-18:1;

(3) because other unnamed individuals "who know the law" had told him that "once you go federal you don't have to grieve .... You can just put in your ... complaint...." *Id.* at 18:1-7;

(4) because "[t]he defendant[s] made sure [his] grievance was not filed properly[,]" Opp. to Defs.' Mot. for

4

Summary Judgment ("Opp.") ¶ 6.[3]

McCullough initially filed suit on July 26, 2004, naming Burroughs and Mendez as defendants in both their individual and official capacities. Burroughs and Mendez moved to dismiss the complaint, arguing that McCullough had not exhausted his administrative remedies, as required by the Prisoner Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). Because the parties presented material outside the pleadings, the Court construed the motion as one for summary judgment. After dismissing McCullough's official-capacity claims *sua sponte* as barred by the Eleventh Amendment, the Court otherwise denied defendants' motion, holding that there were material issues of fact as to (1) whether the official grievance procedures were meaningfully "available" to McCullough, and (2) whether the defendants should be estopped from raising the exhaustion defense. *See McCullough*, 2005 WL 3164248, at *4.

On February 10, 2006, defendants took McCullough's deposition. Of note, defendants specifically inquired why McCullough had not filed a formal grievance:

> Q. [W]hen I did my initial research on this, I didn't find that you had grieved the incident. Are you familiar with what I'm talking about?
>
> A. Oh, yeah, I'm – I'm familiar with what you're talking about. Okay, the reason why I didn't grieve – didn't grieve the incident is because I grieved several incidents that took place before that and nothing was actually done before that because there was a lot of cover-ups within that facility [i.e., Arthur Kill] at that present

---

[3] The first of these four explanations was given prior to McCullough's deposition, in an August 2, 2005 affidavit; the second and third, on February 10, 1006, in his deposition testimony; and the fourth, subsequent to his deposition, in an unsworn, undated submission filed on November 13, 2007.

5

> moment and plus, um, I was, um, conspiring with other
> individuals who know the law and they told me go
> federal because once you go federal you don't have to
> grieve, as far as with the state. You can just put in your
> – your complaint straight into the federal [court]. So
> that's why I did that that way.

Dep. at 17:14-18:8.

Defendants now move for summary judgment pursuant to Rule 56(c), arguing (1) that, in light of McCullough's deposition, the non-exhaustion issue can now be decided in defendants' favor; (2) that McCullough's "injury" is *de minimis* and not cognizable under the PLRA or the Eighth Amendment; and (3) that McCullough's factual allegations are insufficiently detailed to make out a valid First Amendment retaliation claim.

## DISCUSSION

A district court must grant summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). In considering a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 255). Moreover, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest arguments that they suggest.'" *Forsyth v. Federation Employment &*

6

*Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (quoting *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994)). Even so, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).

Here, defendants once again argue that McCullough's claims should be dismissed on account of his failure to exhaust all administrative remedies prior to filing suit. Non-exhaustion is a bar to any "action . . . with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility . . . ." 42 U.S.C. § 1997a(e); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002). There is no dispute that McCullough failed to comply with the DOCS' established formal grievance procedure, which the Court has previously described in detail. *See McCullough*, 2005 WL 3164248, at *3. As the Court noted in denying the defendants' previous motion, however, the Second Circuit "has recognized that . . . certain caveats apply" to the PLRA's mandatory exhaustion requirement. *See McCullough*, 2005 WL 3164248, at *3 (citing *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)).

Most relevantly, the Second Circuit has held that administrative procedures may be deemed unavailable in practice, even though "available" in theory, where prison officials use violence and threats to keep an inmate from utilizing them, *see Hemphill v. New York*, 380 F.3d 680, 687-88 (2d Cir. 2004); "[t]he test for deciding whether the ordinary grievance procedures were available . . . [is whether] a similarly situated individual of ordinary firmness [would] have deemed them available." *Id.* at 688 (internal quotation marks omitted). The Second Circuit has also held that a prison official who prevents a

7

prisoner from utilizing administrative procedures through threats and violence may be equitably estopped from invoking the exhaustion requirement. *See id.* at 688-89 (citing *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004)).[4]

In response to defendants' prior motion, the Court held that a material issue of fact existed as to whether either of these exceptions to the exhaustion requirement applied. McCullough had never explicitly stated that the reason he had not exhausted his administrative remedies was because he feared further retaliation. Nonetheless, the Court construed his arguments liberally, as it was bound to do, and decided that, given the limited information before it, the Court "[could not] conclude at [that] stage" that the *Hemphill* exceptions to the exhaustion requirement were inapplicable. *McCullough*, 2005 WL 3164248, at *4.

Now, however, the Court has the benefit of McCullough's February 10, 2006 deposition testimony. At that deposition, when asked point-blank why he had not filed a formal grievance, McCullough's response had nothing to do with intimidation or retaliation. Rather, as he explained, he did not do so because (1) he had "grieved several incidents that took place before" without success, and (2) other unidentified "individuals" had "told [him] to go [to] federal [court] because once you [do so,] you don't have to grieve . . . ." Dep. at 17:21-18:8. These explanations do not constitute valid excuses for non-

---

[4] The Second Circuit has recognized that "the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, [and] (b) situations in which administrative remedies are not 'available' to the plaintiff . . . ." *Giano*, 380 F.3d at 677 n.6. Non-exhaustion may also be excused under "special circumstances[,]" such as where a prisoner "reasonably [mis]interprets" ambiguous DOCS regulations. *Id.* at 676. No such circumstances exist here.

8

exhaustion. *See Martinez v. Williams*, No. 04 CIV.1938(WCC), 349 F. Supp. 2d 677, 682 (S.D.N.Y. 2004) (futility); *Tackman v. Goord*, No. 99-CV-0438A(F), 2005 WL 2347111, at *31 (W.D.N.Y. Sept. 26, 2005) (ignorance of the law).[5] Now that McCullough's explicit answer is on the record, the Court must assume McCullough meant what he said; while a court must charitably construe a *pro se* plaintiff's arguments, it cannot willfully ignore his unambiguous testimony simply because it undermines his claim. *See Cole v. Artuz*, 93 Civ. 5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) ("proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment . . . .").

McCullough has also given other explanations for his non-exhaustion, but none of them creates an issue of fact.[6] His vague, conclusory and inconsistent affidavit

---

[5] McCullough's claim that filing a grievance would have been futile because "nothing was actually done" in response to his prior grievances due to "cover-ups within [the Arthur Kill] facility" must be distinguished from the claim of the plaintiff in *Abney v. McGinnis*, which the Second Circuit found a valid excuse for non-exhaustion. 380 F.3d 663 (2d Cir. 2004). In *Abney*, the plaintiff "adequately plead[ed]" that he had actually *won favorable rulings* in response to prior grievances, but that after "dogged pursuit . . . over two years," these rulings were never implemented. *Id.* at 669. Under those circumstances, the Second Circuit held that "administrative relief [was effectively] 'unavailable' under the PLRA." *Id.* Here, by contrast, McCullough does not contend that he has won a favorable ruling which remains unimplemented. Moreover, as discussed below, his allegations regarding prior grievances are entirely conclusory.

[6] As a preliminary matter, regarding McCullough's conclusory post-deposition allegation that "[t]he defendant[s] made sure [his] grievance was not filed properly[,]" Opp. ¶ 6, "[i]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987). And as for McCullough's vague *pre-deposition* statement that "[n]o grievance was given . . . because of bias[ed] acts already placed against [him,]" Aff./Mot. to Dismiss ¶ 11, the Court notes that at least one district court in this circuit has extended the Second Circuit's rule that deposition testimony trumps *subsequent* inconsistent affidavit testimony to situations such as the present one, where a party's deposition contradicts his *earlier* affidavit. *See AB v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 316 & n.4 (S.D.N.Y.

9

statements do not create a genuine factual question as to whether the plaintiff was subjectively "misled, threatened, or otherwise deterred from fulfilling the requisite procedures." *Winston v. Woodward*, No. 05 Civ. 3385(RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (citing *Hemphill*, 380 F.3d at 688-89; *Ziemba*, 366 F.3d at 163-64). Quite to the contrary, McCullough was able to file a complaint (albeit an unofficial one) with the prison superintendent the very day of the incident.[7] Thus, estoppel does not apply. *See id.*

Nor does there remain any genuine factual question whether, *objectively* speaking, "a similarly situated individual of ordinary firmness [would] have deemed [the appropriate grievance procedures] available." *Hemphill*, 380 F.3d at 687-88. First, McCullough offers no evidence that the defendants committed further acts of harassment or intimidation *after* the assault at issue which deterred him from filing a grievance. *Cf. Snyder v. Goord*, No. 9:05-CV-01284, 2007 WL 957530, at *9 (N.D.N.Y Feb. 28, 2007) (defendant made "efforts to have [plaintiff] harmed by other inmates" following the

---

2005); *accord Darnell v. Target Stores*, 16 F.3d 174, 177 (7th Cir. 1994) (holding that "though the timing is reversed [i.e., the affidavit *preceded* the contradictory deposition testimony], the rule [that the deposition trumps] is the same").

[7] The Court notes the Second Circuit's warning in *Hemphill* that the mere fact that a prisoner has complained through an unofficial channel does not *necessarily* establish that the prisoner would have been able to file a proper grievance. 380 F.3d at 688 ("intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority . . . ."). Here, however, the undisputed evidence establishes that McCullough did not bypass an "internal" procedure in favor of a presumably safer external procedure. Rather, he told Burroughs *directly* that Burroughs was "going to have to answer for" what he had just done, Dep. at 12:25-13:6; he told Mendez *directly* that he intended to file a complaint against Burroughs, *id.* at 13:12-17; and he filed a complaint *internally* with the superintendent.

incident at issue); *Larry v. Byno*, No. 9:01-CV-1574, 2006 WL 1313344, *4 (N.D.N.Y May 11, 2006) (during investigation of plaintiff's formal complaint, defendant "physically assaulted him and expressly threatened that he would kill him"). Nor does McCullough allege that the defendants made specific demands that he refrain from filing a grievance over these events, or specific verbal threats of reprisal in the event that he did so – rather, he alleges merely that Burroughs made a generic threat to "get [McCullough] sooner or later." Aff./Compl. ¶ 8; *cf. Doe v. Barrett*, No. 3:01cv519 (PCD), 2006 WL 3741825, at *1-*2 (D. Conn. Dec. 18, 2006) (defendant ordered plaintiff not to tell anyone about the incidents and threatened to "out" plaintiff as homosexual if he did so); *Lunney v. Brureton*, No. 04 Civ. 2438(LAK)(GWG), 2007 WL 1544629, at *19 (S.D.N.Y. May 25, 2007) (officer assaulted plaintiff and said, "if you don't stop writing grievances I'm going to break your fuckin' neck"); *Hepworth v. Suffolk County*, No. 2:02-CV-6473 ENV/ETB, 2006 WL 2844408, at *6-7 (E.D.N.Y. Sept. 29, 2006) (officer "told plaintiff that he could not file a grievance, and that if he attempted to do so again, plaintiff would receive another beating").

In the end, McCullough states only that "[u]pon information and belief," the incident at issue in this lawsuit was *itself* an act of retaliation for an unspecified *earlier* grievance. Aff./Compl. ¶ 9. But this allegation is entirely conclusory and unsubstantiated; he provides no information at all about the complaints that provoked the alleged retaliation. *See, e.g., Nunez v. Goord*, 172 F. Supp. 2d 417, 431 (S.D.N.Y. 2001) (holding that plaintiff's bare allegations of retaliation and conspiracy by prison officials "are too unsupported, speculative and conclusory to survive summary judgment" (internal quotation marks omitted)); *Winston*, 2008 WL 2263191, at *9 (granting summary judgment

on non-exhaustion grounds where plaintiff's allegations of retaliation "st[ood] alone and unsupported" (quoting *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004))). To defeat summary judgment, McCullough "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted). Accordingly, summary judgment is appropriate.[8]

## CONCLUSION

Because the Court finds for defendants on the issue of non-exhaustion, it need not reach defendants' First and Eighth Amendment arguments. Summary judgment is granted as to all claims.

**SO ORDERED.**

s/FB

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 27, 2008

---

[8] The Court's research has not disclosed any cases acknowledging the commonsense proposition that some acts of physical aggression, *even though retaliatory*, are so minor as to fail, *as a matter of law*, to qualify as conduct that might prevent an "individual of ordinary firmness" from filing a grievance. It is not necessary to reach that issue here, since McCullough has not even alleged sufficient facts to prove retaliation in the first instance. However, even if he had done so, the Court harbors serious doubts whether an isolated blow causing *no* physical injury, without more, could ever meet *Hemphill*'s "individual of ordinary firmness" test.

12